UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BONNI L. MALONE,

    Plaintiff(s),

v.

ANDREW SAUL,

    Defendant(s).

Case No.: 2:19-cv-00150-APG-NJK

**REPORT AND RECOMMENDATION**

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently before the Court is Plaintiff's Motion for Reversal and/or Remand. Docket No. 35.[1] The Commissioner filed a response in opposition and a cross-motion to affirm. Docket Nos. 36-37. A reply was filed, along with a response to the cross-motion. Docket Nos. 38-39. This action was referred to the undersigned magistrate judge for a report of findings and recommendation.

**I.    STANDARDS**

    A.    <u>Judicial Standard of Review</u>

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

---

[1] Plaintiff initially appeared *pro se*, but is now represented by *pro bono* counsel. *See, e.g.*, Docket No. 29.

1

Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id.* To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ____, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the Administrative Law Judge ("ALJ") to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive

and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B. Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See, e.g.*, 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not

severe when medical and other evidence does not establish a significant limitation of an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 404.1522. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(d). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity. 20 C.F.R. § 404.1520(e). The residual functional capacity is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. Social Security Rulings ("SSRs") 96-8p.[2] In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. SSR 16-3p. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

---

[2] SSRs constitute the Social Security Administration's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Id.*

The fourth step requires the ALJ to determine whether the individual has the residual functional capacity to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565. If the individual has the residual functional capacity to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     BACKGROUND

### A.     Procedural History

On December 4, 2014, Plaintiff filed an application for disability insurance benefits. *See, e.g.*, Administrative Record ("A.R.") 473-74. Plaintiff alleged a disability onset date of January 3, 2013. *See* A.R. 377. Plaintiff's claim was denied initially on July 29, 2015, and upon reconsideration on February 5, 2016. A.R. 398-401, 407-12. On March 29, 2016, Plaintiff filed a request for a hearing before an ALJ. A.R. 413-14. On August 15, 2017, Plaintiff, Plaintiff's representative, and a vocational expert appeared for a hearing before ALJ Christopher Daniels. *See* A.R. 347-61. On February 16, 2018, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Social Security Act, through the date of

the decision. A.R. 38-58. On November 27, 2018, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. A.R. 1-7.

On January 25, 2019, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). *See* Docket No. 1.

### B. The Decision Below

The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. A.R. 42-51. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and has not engaged in substantial gainful activity since January 3, 2013. A.R. 43. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease and coronary artery disease. A.R. 43-45. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 45. The ALJ found that Plaintiff has the residual functional capacity to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b). A.R. 45-49. At step four, the ALJ found Plaintiff capable of performing past relevant work as a realtor. A.R. 49-50. The ALJ included an alternative finding that Plaintiff could also perform other jobs existing in significant numbers in the national economy. A.R. 50.

Based on all of these findings, the ALJ found Plaintiff not disabled through the date of the decision. A.R. 50-51.

## III. ANALYSIS AND FINDINGS

Plaintiff raises two primary arguments on appeal. First, Plaintiff argues that the ALJ erred in discounting her testimony, most significantly with respect to the ALJ's reliance on her daily activities. Second, Plaintiff argues that the ALJ erred in weighing the medical opinion evidence.[3]

---

[3] The motion includes several other tangential arguments, many of which are not well developed and some of which are offshoots of the arguments addressed herein. The undersigned focuses on the primary arguments presented. Any remaining arguments either fail for reasons substantially similar to those outlined herein or are insufficiently developed to enable judicial review. *See, e.g.*, *Channey v. Berryhill*, 2018 WL 5316020, at *3 n.3 (D. Nev. Mar. 26, 2018) (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996)), *adopted* 2018 WL 5315195 (D. Nev. Oct. 26, 2018).

### A. Plaintiff's Testimony

Plaintiff argues that the ALJ erred by discounting her testimony, pointing most significantly to the ALJ's reliance on Plaintiff's daily activities stemming from being a single mother and from working as a realtor. *See* Mot at 13-15; *see also id.* at 17 (discussing findings regarding Plaintiff working as a realtor), 19-20 (discussing findings regarding Plaintiff caring for her children). The Commissioner counters that the ALJ properly discounting Plaintiff's allegations of disabling impairment based on legally permissible factors that were supported by substantial evidence. *See* Resp. at 4-5, 8-9. The Commissioner has the better argument.

The ALJ is required to engage in a two-step analysis to evaluate a claimant's testimony as to pain and other symptoms: (1) determine whether the individual presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged; and (2) if so, whether the intensity and persistence of those symptoms limit an individual's ability to perform work-related activities. *See* SSR 16-3p. In the absence of evidence of malingering, an ALJ may only reject a claimant's testimony about the severity of symptoms by giving specific, clear, and convincing reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Factors that an ALJ may consider include inconsistent daily activities, an inconsistent treatment history, and other factors concerning the claimant's functional limitations. *See* SSR 16-3p.

Credibility and similar determinations are quintessential functions of the judge actually observing witness testimony, so reviewing courts generally give deference to such assessments. *See, e.g.*, *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). Specific to the context of Social Security appeals, an ALJ's assessment of a claimant's testimony is generally afforded "great weight" by a reviewing court. *See, e.g.*, *Gontes v. Astrue*, 913 F. Supp. 2d 913, 917-18 (C.D. Cal. 2012) (citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Circ. 1989) and *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). If an ALJ's determination to discount a claimant's testimony is supported by substantial evidence, a court should not second-guess that determination. *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility").

In this case, Plaintiff correctly notes that there are copious medical records, including most significantly those related to back injuries from an automobile accident. *See* Mot. at 3-9. The ALJ found that such records constitute sufficient objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged. A.R. 46.

It is at the second step of the above inquiry at which the ALJ determined that Plaintiff faltered, resulting in the ALJ discounting her allegations concerning the intensity, persistence, and limiting effects of those symptoms. *See id.* To that end, the ALJ succinctly summarized Plaintiff's testimony and allegations as follows:

> The claimant is fifty-two years old. On January 3, 2013, she was involved in a motor vehicle accident. She is alleging symptoms of cervical spine and left shoulder pain since the accident (Ex. 12F/l). She also alleges numbness in her arms and legs, heart problems, and thyroid problems. She testified that she can sit for three to four minutes. She said she is unable to do chores. She said she passes out several times per day. She testified that she is easily distracted and unable to focus more than two to three minutes. She said she is in pain all day and spends eight to twelve hours per day laying down.

A.R. 46.[4] The ALJ discounted these allegations of disabling limitations based on a number of considerations, including the following: (1) that the medical record showed normal findings or only relatively mild impairment, A.R. 47 (physical impairments); A.R. 48 (mental impairments); (2) that Plaintiff underwent conservative treatment with respect to her physical symptoms given her failure to have the back surgery recommended and had no treatment with respect to her mental symptoms, A.R. 48; and (3) that Plaintiff's daily activities included, *inter alia*, working as a realtor, homeschooling her three children, and driving without difficulty, A.R. 48-49.

The undersigned agrees with the Commissioner that ALJ did not err in discounting Plaintiff's testimony. With respect to the existence of normal or relatively mild conditions noted in the record, Plaintiff does not dispute on appeal that substantial evidence supports the ALJ's finding.[5] With respect to the conservative nature of physical treatment, the failure to have the

---

[4] Plaintiff asserts that he ALJ fails to even address her testimony. *See* Mot. at 15; Reply at 4. This argument is not persuasive. The ALJ explicitly discusses Plaintiff's testimony. A.R. 46.

[5] At best, Plaintiff appears to argue that other aspects of the record could support the ALJ reaching a different conclusion. *See* Mot. at 14. Such an argument is not persuasive. *See, e.g.*,

surgery prescribed, and the lack of mental health treatment, Plaintiff again does not dispute on appeal that substantial evidence supports those findings. Moreover, these are legally permissible factors for an ALJ to consider in discounting a claimant's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (inconsistency with medical record); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (conservative treatment); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to comply with prescribed course of treatment); *Burch*, 400 F.3d at 681 (lack of treatment).[6]

Plaintiff argues most directly on appeal that the ALJ erred in the findings related to her daily activities. *See* Mot. at 17, 19-20. The undersigned is not persuaded that any error was committed. The ALJ discounted Plaintiff's testimony in part based on her continued work as a realtor after the alleged onset date. *See, e.g.*, A.R. 48. The record is clear, including from her own testimony, that Plaintiff did work as a realtor after the alleged onset date. *See, e.g.*, A.R. 352-53. That such work may not suffice to constitute substantial gainful activity[7] does not prevent an ALJ from relying on it to show that the allegations of disabling limitations are not as significant as presented by the claimant. *See Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1253 (W.D. Wash. 2010) (regardless of whether work constitutes SGA, an ALJ may take it into account in discounting a claimant's testimony); *see also Greger v. Barnhart*, 464 F.3d 968, 971, 972 (9th Cir. 2006) (although the ALJ found the claimant had not engaged in SGA, work done "under the table" after the alleged onset date was properly considered in discounting the claimant's testimony); *Bellinger v. Colvin*, 2016 WL 1054580, at *4, 5 (D. Nev. Jan. 22, 2016) (although the ALJ found the claimant was not engaged in SGA, work as a cruise ship performer after the alleged onset date was properly

---

*Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

[6] These findings, standing alone, arguably support affirming the ALJ's decision to discount Plaintiff's testimony without addressing the other factors the ALJ relied upon. *See, e.g.*, *Batson*, 359 F.3d at 1197 (discussing harmless error analysis in the context of ALJ's multi-factored reasoning for discounting a claimant's testimony).

[7] At the hearing, the ALJ expressed skepticism as to whether Plaintiff had engaged in substantial gainful activity. A.R. 351-54. In the decision, however, the ALJ merely found that the evidence did not "conclusively" establish that she had. *See* A.R. 43.

9

considered in discounting medical opinion evidence), *adopted*, 2016 WL 1045482 (D. Nev. Mar. 13, 2016). The ALJ did not err in relying on Plaintiff's work as a realtor.

The ALJ also discounted Plaintiff's testimony in part based on her homeschooling her three children during the day. *See, e.g.*, A.R. 48. The record supports this factual finding, including Plaintiff's own attestation of her daily activities. *See* A.R. 485 ("I teach my children (M-F)"); *see also* A.R. 488, 726. Plaintiff does not explain in meaningful fashion how the ALJ erred in finding homeschooling three children to be inconsistent with Plaintiff's testimony of omnipresent, debilitating impairment.[8] The Ninth Circuit and other courts have made clear that an ALJ does not err in finding the duties involved in homeschooling children to be inconsistent with allegations of disabling limitations. *See Hutton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (concluding that the ALJ did not err in discounting nurse's opinion given, *inter alia*, daily activities that included homeschooling); *Michael L. v. Comm'r of Soc. Sec.*, 2019 WL 2602506, at *6 (W.D. Wash. June 25, 2019) (concluding that daily activities, "particularly [] caregiving and homeschooling [] young children," were "highly inconsistent" with allegations of disability); *see also Burgess v. Colvin*, 2013 WL 5962966, at *7 (E.D. Wash. Nov. 7, 2013); *Capobores v. Astrue*, 2011 WL 1114256, at *9 (D. Id. Mar. 25, 2011). The ALJ did not err in relying on Plaintiff's homeschooling her children.

The ALJ also discounted Plaintiff's testimony in part based on her possession of a driver's license and her driving. *See, e.g.*, A.R. 48. The record supports this factual finding, including Plaintiff's own attestation of her daily activities. *See* A.R. 488 ("I drive to library"); *see also* A.R. 487, 714, 725-26. Plaintiff does not meaningfully explain how it was error for the ALJ to find that her ability to drive is inconsistent with her testimony that, *inter alia*, she can sit for only a few minutes at a time, she passes out regularly several times a day, and she cannot focus for more than a few minutes, *see, e.g.*, A.R. 46, 357-58. An ALJ does not err in concluding that the holding of

---

[8] Plaintiff's motion does not address the ALJ's reliance on homeschooling. Plaintiff instead focuses her argument on the concurrent statements that Plaintiff is a single mother, asserting that such a finding is inconsistent with *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). The undersigned is unpersuaded as that case involved an ALJ's generalized finding of "childcare responsibilities" and did not involve a claimant homeschooling her children. *See id.* at 676.

a driver's license and the ability to drive contradicts a claimant's testimony that, *inter alia*, she passes out several times daily. *Cf. Gregory J.M. v. Saul*, 2019 WL 4010838, at *10 (D. Mont. Aug. 26, 2019) (where the claimant alleged that he passed out once every three months, his continued driving and the fact that his driving privileges had not been revoked were clear and convincing reasons for discounting his testimony); *Quesenberry v. Colvin*, 2014 WL 4782700, at *15 (W.D. Va. Sept. 24, 2014) ("Given the risks involved, [woodworking and driving] are not something that an individual with a disabling propensity to faint are likely to engage with any regularity"). The ALJ did not err in relying on Plaintiff's driving.

In short, substantial evidence supported the ALJ's finding that Plaintiff's daily activities were inconsistent with her testimony of disabling limitations. Moreover, that is a legally permissible factor for an ALJ to consider in discounting a claimant's testimony. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).[9]

As discussed above, substantial evidence supports the factors relied upon by the ALJ in discounting Plaintiff's testimony and those factors are legally permissible considerations. The ALJ did not err in discounting Plaintiff's testimony.

B.   Medical Opinion Evidence

Plaintiff next argues that the ALJ erred in weighing the medical opinion evidence. *See* Mot. at 15-18. The Commissioner counters that the ALJ properly evaluated the medical opinion evidence, that any error was harmless, and that Plaintiff failed to sufficiently develop her arguments to enable judicial review. *See* Resp. at 5-9.[10] The Commissioner has the better argument.

A treating physician's medical opinion as to the nature and severity of an individual's impairment is entitled to controlling weight when that opinion is well-supported and not

---

[9] Plaintiff points again to other facts that she contends could support her testimony, such as the fact that she has a personal care assistant. *See* A.R. 2261. As noted above, such an argument is not persuasive. *See, e.g.*, *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld").

[10] Plaintiff bears the burden of not only establishing error by the ALJ, but also that any such error was not harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

11

inconsistent with other substantial evidence in the record. *See, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). The opinion of a treating physician is not necessarily conclusive as to the existence of an impairment or the ultimate issue of a claimant's disability. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). When the opinion of a treating physician is contradicted by another doctor, the ALJ may reject the opinion of the treating physician by articulating specific and legitimate reasons that are supported by substantial evidence. *Id.* at 957. The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Id.*

          1.      Dr. Stuart Kaplan

Plaintiff argues that the ALJ erred in giving no weight to a letter from treating physician Dr. Kaplan dated March 6, 2014. *See* Mot. at 17-18. In particular, Plaintiff notes that Dr. Kaplan made various findings regarding radiculopathy and provided a surgical recommendation. *See id.* (citing A.R. 626).

There seems to be some confusion in the motion practice on this issue. The medical record generated by Dr. Kaplan appears at Exhibit 6F. A.R. 624-32. The ALJ discussed the medical record regarding Plaintiff's radiculopathy and, specifically, Dr. Kaplan's recommendation for a cervical fusion surgery. *See* A.R. 47, 48. As noted above, the ALJ found that the objective medical evidence did not support a finding of disabling limitations and that the existence of disabling limitations was inconsistent with Dr. Kaplan's own records. A.R. 47 (discussing relatively "mild" findings, including in Exhibit 6F).[11] As also noted above, the ALJ further found that Plaintiff failed to follow Dr. Kaplan's surgery recommendation, which rendered Plaintiff's treatment conservative in nature. A.R. 48. No meaningful argument has been presented that these findings are not supported by substantial evidence. Moreover, the factors identified are legally permissible considerations in weighing the opinion of a treating physician. *See Tommasetti v. Astrue*, 533 F.3d

---

[11] The ALJ specifically noted that Dr. Kaplan's physical examination of Plaintiff showed she "was able to move all extremities well with normal bulk, power and tone, steady gait, and numbness along the C7 nerve root distribution." A.R. 47 (citing Ex. 6F/2).

1035, 1041 (9th Cir. 2008) (inconsistent with the medical record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (inconsistent with doctor's own treating notes); *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) (claimant's noncompliance with recommended course of treatment);[12] *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (conservative treatment).

Plaintiff's motion appears to challenge a different aspect of the decision below in which the ALJ gave no weight to a letter from Dr. Kaplan to Plaintiff's attorney that appears to have been generated as part of civil litigation arising out of the 2013 car accident. *See* Mot. at 17 (citing A.R. 49); *see also* A.R. 49 (ALJ statement of assigning no weight to Ex. 52F); A.R. 2355 (Ex. 52F). This letter is separate from Dr. Kaplan's medical records discussed above.[13] The letter consists of a single paragraph. A.R. 2355. It addresses the cost of Plaintiff's treatment to date, the cost of the recommended surgery, the reasonableness of those costs, and Dr. Kaplan's opinion that the need for treatment was related to the 2013 car accident. *See id*. The ALJ did not give this letter weight as it failed to show any significant or disabling impairments, and the ALJ ultimately concluded that Plaintiff would indeed have difficulty in performing more than light exertional work. *See* A.R. 49. Hence, the ALJ found that Plaintiff was more limited than was suggested by the contents of this cursory letter. Especially given the ALJ's prior analysis of Dr. Kaplan's actual medical records and surgery recommendation, the undersigned fails to discern any error—let alone a harmful error—in the ALJ's weighing of this tangentially relevant letter.

---

[12] There is Ninth Circuit case law regarding the ability of an ALJ to discount a claimant's own testimony when she did not follow a prescribed course of treatment without good reason. *See, e.g.*, *Orn v. Astrue*, 495 F.3d at 638. It does not appear that the Ninth Circuit has addressed specifically whether the same reasoning is a proper basis for discounting a treating physician's opinion. Nonetheless, several district court decisions from within the Ninth Circuit have concluded that it is. *See, e.g.*, *Rodriguez v. Comm'r of Soc. Sec. Admin*, 2018 WL 6831535, at *4 (C.D. Cal. Dec. 27, 2018); *Ibarra v. Comm'r of Soc. Sec.*, 2018 WL 347818, at *12 (E.D. Cal. Jan. 10, 2018); *Passi v. Colvin*, 2015 WL 4163100, at *5 (C.D. Cal. July 9, 2015); *Leal v. Colvin*, 2013 WL 1715419, at *3 (E.D. Cal. Apr. 19, 2013).

[13] In short, Dr. Kaplan's medical record appears as Exhibit 6F and was discounted by the ALJ for the reasons identified above. The portion of the ALJ's decision identified in Plaintiff's motion involves the little weight that the ALJ gave to Dr. Kaplan's letter appearing as Exhibit 52F.

### 2. Dr. Zev Lagstein

Plaintiff next argues that the ALJ erred in relying in part on the opinion of consultative examiner Dr. Lagstein, despite generally giving that opinion "little weight" in light of subsequent evidence showing limitations to be more significant than those Dr. Lagstein had found. *See* Mot. at 17; *see also id.* at 15. The Commissioner counters that any error with respect to the ALJ's evaluation of Dr. Lagstein's opinion was harmless given that he opined that Plaintiff could perform a range of medium work and that opinion was discounted by the ALJ finding in Plaintiff's favor that she could instead only perform light work. *See* Resp. at 6-7. The Commissioner has the better argument.

An ALJ is permitted to accept parts of a medical opinion, while discounting other parts. *See, e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). In formulating the RFC, the ALJ provided an overview of the longitudinal record in this case, including "account[ing] for" the relatively normal findings made by Dr. Lagstein. A.R. 47-48. Nonetheless, the ALJ did not adopt Dr. Lagstein's ultimate conclusion that Plaintiff could perform a range of medium work given later medical evidence. A.R. 49. The undersigned fails to discern error—let alone harmful error—in an ALJ accounting for a consultative examiner's underlying findings as part of a longitudinal analysis, while giving a claimant the benefit of adopting a more restrictive RFC than found in the examiner's ultimate conclusion.

### 3. Dr. Stephanie Holland

Plaintiff next asserts that the ALJ erred in giving weight to the opinion of Psychologist Stephanie Holland because it "contains numerous misstatements of fact." *See* Mot. at 17. The ALJ cited to Dr. Holland's opinion, in addition to other parts of the record, to show that Plaintiff reported being able to work as a realtor after the alleged onset date. *See* A.R. 44 (citing Exhibit 15F). Plaintiff takes exception to Dr. Holland's recounting of what Plaintiff had reported to her, including that she continued to work as a realtor. *See id.*; *see also* A.R. 725-26.[14] Other than a

---

[14] Plaintiff also disputes that she told Dr. Holland that she was close to graduating from the College of Southern Nevada and was on the dean's list there. *See* Mot. at 17. Plaintiff did not identify any aspect of the ALJ's decision relying on those facts, however, so any alleged inaccuracy in that aspect of Dr. Holland's report is immaterial.

bald assertion of error, Plaintiff does not articulate a basis for this Court to rule that the ALJ erred in relying on Dr. Holland's representations—reflected in the medical record—as to what Plaintiff had conveyed to her. Moreover and importantly, Plaintiff's own testimony and earnings records show that she was in fact working as a realtor after the alleged onset date. *See, e.g.*, A.R. 352-53 (Plaintiff testifying to the ALJ that in "December 2015, I sold a house"); *see also* Mot. at 3 (acknowledging that Plaintiff had sold several houses after her alleged onset date). Other parts of the record similarly evidence that Plaintiff was working as a realtor after the alleged onset date. *See, e.g.*, A.R. 714 (Dr. Lagstein report dated May 4, 2015, indicating that Plaintiff "works as a realtor and is still employed"). There was no error in the ALJ citing Dr. Holland's opinion for the undisputed proposition that Plaintiff was working as a realtor after the alleged onset date.

    4. Hillary Weiss

Plaintiff next argues that the ALJ erred in giving significant weight to the opinion of psychiatric consultant Hilary Weiss, Ph.D. that Plaintiff does not have severe mental impairments. A.R. 49. The ALJ assigned that weight upon finding that Dr. Weiss's opinion was consistent with the fact that Plaintiff obtained minimal treatment for mental impairment and her actual ability to function, as demonstrated by her daily activities. *See id.* As discussed above, those findings are supported by substantial evidence and are legally proper factors for an ALJ to consider.

Plaintiff instead argues that the ALJ erred in giving Dr. Weiss' opinion significant weight because she was not qualified to opine on Plaintiff's physical conditions and her discussion of those conditions is inconsistent with other aspects of the record. *See* Mot. at 17. This argument is inapposite here given that the ALJ relied only on Dr. Weiss' conclusion that Plaintiff did not suffer severe mental impairment. *See* A.R. 49.[15]

---

[15] This argument is not entirely clear. To the extent Plaintiff is challenging Dr. Weiss' recitation of daily activities, including working as a realtor and homeschooling her children, there is no error in identifying those daily activities as Plaintiff herself attested to doing both. *See, e.g.*, A.R. 352-53, 485, 488.

## IV. CONCLUSION

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Reversal and/or Remand (Docket No. 35) be **DENIED** and that the Commissioner's Cross-Motion to Affirm (Docket No. 36) be **GRANTED**.

Dated: February 3, 2020

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Nancy J. Koppe
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).